## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| ALP BAYSAL, THOMAS MAXIM, and SANDRA ITALIANO, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Civil Action No. 3:21-cv-00394-wmc |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Hon. William M. Conley |
| MIDVALE INDEMNITY COMPANY and AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ALLEGED FACTS ............................................................................................................... 2

    Defendants and Their Online Platforms ........................................................................... 2

    The Data Breach .............................................................................................................. 3

    Plaintiffs' Alleged "Injury" .............................................................................................. 3

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

    I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING BECAUSE THEY HAVE NOT SUFFERED AN INJURY AS A RESULT OF DEFENDANTS' CONDUCT ............................................................................................. 5

        A.    Plaintiffs Lack Standing Because They Have Not Suffered a Cognizable Injury-In-Fact. 6

            1.    Loss of Time ................................................................................................. 6

            2.    Identity Fraud Related to Unemployment Benefits ................................. 7

            3.    Anxiety, Emotional Distress, and Loss of Privacy ................................. 8

            4.    Expenses From Credit Freezes on Credit Reports ................................... 8

            5.    Increased Risk of Fraud and Identity Theft in the Future ...................... 9

            6.    Maxim's Allegations Regarding Schwab and Klarna Fail Facially and Factually. 11

        B.    Under *TransUnion*, The DPPA Alone Is Insufficient to Confer Standing. .............. 13

    II.    PLAINTIFFS' CLAIMS SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM. .............................................................................. 14

        A.    Count I (Violation of the DPPA) Fails Because Defendants Did Not Knowingly Disclose Plaintiffs' Data for an Impermissible Purpose. ................................................... 14

            1.    Plaintiffs Do Not Allege Defendants Made a Knowing Disclosure of Protected Information. ................................................................................................... 14

            2.    The Only Disclosure Alleged in the Amended Complaint Was for a Proper Purpose. ......................................................................................................... 16

        B.    Count II (Negligence) and Plaintiffs' Derivative Count III (Declaratory Judgment) Fail Because Plaintiffs Have Not Alleged an Actual Loss or Damages Resulting from the Alleged Negligence. ......................................................................................................... 17

CONCLUSION .................................................................................................................... 20

i

## INTRODUCTION

Aside from adding two additional plaintiffs, the First Amended Complaint does nothing to address the critical pleading defects identified in Defendants' motion to dismiss Plaintiffs' initial Complaint.  Plaintiffs do not allege any facts curing the fatal defects identified in Defendants' initial motion to dismiss because they cannot plausibly do so.  Plaintiffs are understandably frustrated that their driver's license numbers may have been accessed by cyber criminals in an electronic attack on the quoting platforms operated by Midvale Indemnity Company ("Midvale") and American Family Mutual Insurance Company, S.I. ("American Family" and, together with Midvale, "Defendants").  But this fact, without more, does not confer standing or state a claim.  As a result, the Amended Complaint and this action should be dismissed.

Plaintiffs lack standing because they fail to allege that they suffered a cognizable injury as a result of the alleged data breach.  Plaintiffs do not allege any facts plausibly demonstrating that they lost any money or property as a result of the alleged breach.  Nor could they credibly do so, as the cyber attack alleged in the Amended Complaint does not involve sensitive financial information (*i.e.*, credit card/bank information or social security numbers) that could plausibly cause a financial injury to Plaintiffs.  Instead, the information allegedly disclosed consists *only* of basic records (such as name, address, and driver's license numbers) that cannot plausibly be used to harm Plaintiffs.  Nor do Plaintiffs' vague reference to various emotional harms save their claims.

Plaintiffs' substantive claims – under the Driver's Privacy Protection Act ("DPPA") (Count I), common law negligence (Count II), and for declaratory judgment (Count III) – are also subject to dismissal under Rule 12(b)(6).  The DPPA prohibits (a) *knowing* disclosures of

1

certain protected information (b) for an *improper purpose*; it does not punish corporate victims

of a cyber attack.  The First Amended Complaint fails to allege both a knowing disclosure and

that Defendants had an impermissible purpose for making that knowing disclosure.  Defendants'

disclosure of Plaintiffs' driver's license numbers was the result of a cyber attack, not an

intentional choice to disclose Plaintiffs' information to a third party.  And, even if Defendants'

disclosure was knowing, the First Amended Complaint acknowledges that Defendants collected

and disclosed Plaintiffs' information as part of the process of underwriting automobile insurance

– a purpose expressly permitted under the DPPA.  The fact that the quote request came from

cyber criminals electronically impersonating Plaintiffs does not change the purpose for which

Defendants collected and disclosed the information.

Plaintiffs' Count II (negligence) fails because Plaintiffs have not alleged that they

suffered an actual injury, a required element of negligence and virtually every other tort claim.

Count III (declaratory judgment) is entirely derivative of Counts I and II, and thus should be

dismissed for the same reasons as Counts I and II.

### ALLEGED FACTS[1]

#### *Defendants and Their Online Platforms*

Defendants are insurance companies that underwrite, *inter alia*, automobile insurance.

(Amended Complaint ("Compl.") ¶¶ 2, 13, 14, 18, 19).  Both Defendants provide prospective

customers with real-time rate quotes after they complete an online application.  (*Id.* ¶¶ 4, 20).  As

part of the online underwriting process, Defendants' respective internet platforms automatically

---

[1] For the purposes of this motion, Defendants accept as true the allegations of the Amended
Complaint.

2

query a third-party[2] database to retrieve and prefill certain required information, such as the applicant's driver's license number.  (*Id.* ¶ 21).

### The Data Breach

In early 2021, cyber criminals engaged in an industry-wide attack on numerous automobile insurers' websites.  Plaintiffs allege that Defendants were targeted in this attack.  (*Id.* ¶¶ 5, 23).  The Amended Complaint does not allege that the cyber criminals were able to retrieve any sensitive financial information (*i.e.*, social security numbers, credit card numbers, etc.).  Instead, it alleges that the cyber criminals electronically impersonated prospective customers seeking automobile insurance in order to collect certain information (namely, driver's license numbers) from Defendants' online automobile insurance underwriting platforms.  (*Id.*).

### Plaintiffs' Alleged "Injury"

Plaintiffs allege that after Defendants notified them of the alleged breach, they spent time "monitoring their credit" to guard against identity theft (*id.* ¶¶ 52, 56, 65, 71) and that they suffered unspecified "anxiety" and "emotional distress."  (*Id.* ¶ 122).  Plaintiffs also allege that at some point after they learned of the alleged data breach, they received notices from their respective states that a claim for unemployment benefits had been filed in their name.  (*Id.* ¶¶ 54, 61, 70).  Plaintiffs do not allege that these claims were the result of the data breach at issue in this action or that they lost any money or property as a result of those claims.

In addition to these common allegations, Plaintiff Maxim also alleges that after he learned of the alleged American Family data breach, he received a letter from Charles Schwab regarding a brokerage account that he did not open and discovered a "soft inquiry" on his credit report from Klarna about an unsuccessful attempt by someone to make a purchase at Foot

---

[2] Although not alleged in the Amended Complaint, that third party is LexisNexis.

3

Locker.  (*Id.* ¶¶ 62, 63).  Significantly, however, Maxim does not allege that either of these events had any relationship to the data breach at issue in this lawsuit, that his driver's license number was used, or that he suffered any financial harm.

## LEGAL STANDARD

Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  To establish standing under Rule 12(b)(1), Plaintiffs must show that they suffered an "injury in fact" that is "fairly . . . trace[able]" to Defendants' conduct and is capable of being redressed by a favorable decision from the court.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "[S]tanding is not dispensed in gross."  *MAO-MSO Recovery II, LLC v. Am. Fam. Mut. Ins. Co.*, No. 17-CV-175- JDP, 2018 WL 835160, at *5 (W.D. Wis. Feb. 12, 2018) (quoting *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733 (1st Cir. 2016)).  Rather, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (U.S. 2021).

Under Rule 12(b)(6), the Court "will accept all well-pleaded facts in the complaint as true."  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

4

**ARGUMENT**

I.    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING BECAUSE THEY HAVE NOT SUFFERED AN INJURY AS A RESULT OF DEFENDANTS' CONDUCT.**

Plaintiffs bear the burden of establishing federal subject matter jurisdiction, including standing under Article III. *TransUnion*, 141 S. Ct. at 2213-14; *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020). Article III standing requires a plaintiff to demonstrate: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan*, 504 U.S. at 560-61); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Spokeo*, 136 S. Ct. at 1547.

To plead an injury in fact, a plaintiff must allege an injury that is *both* concrete and particularized. *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1548. Article III's concreteness mandate is only satisfied if the Plaintiffs' injury is "real, and not abstract." *TransUnion*, 141 S. Ct. at 2204. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560 n.1). The fact "[t]hat a suit may be a class action . . . adds nothing to the question of standing." *Id.* at 1547 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n.20 (1976)) (ellipses in original; internal quotation marks and citation omitted). Named plaintiffs must "show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* Because Plaintiffs have not done so here, their claims should be dismissed pursuant to Rule 12(b)(1).

5

### A.   Plaintiffs Lack Standing Because They Have Not Suffered a Cognizable Injury-In-Fact.

Plaintiffs do not allege any tangible way in which they have lost money or property or been physically injured as a result of the complained of conduct.  Instead, the Amended Complaint identifies five alleged "injuries": (1) loss of time; (2) identity fraud related to unemployment benefits; (3) anxiety, emotional distress, and loss of privacy; (4) expenses from placing credit freezes on their credit reports; and (5) increased risk of fraud and identity theft *in the future*.  None of these allegations is sufficient to establish a cognizable injury.  The same is true of the Maxim-specific allegations concerning fraudulent activity not plausibly alleged to relate to the breach at issue in this action.  Accordingly, Plaintiffs' claims should be dismissed for lack of standing under Rule 12(b)(1).

### 1.   Loss of Time

Plaintiffs first allege that they spent time "researching [their] options to respond," "contacting the New York State Department of Labor" and the Florida Reemployment Assistance Program, and "reviewing [their] credit monitoring service results and reports."  (Compl. ¶¶ 55, 56, 64, 65, 70, 71).  Lost time, without more, does *not* constitute an injury sufficient to confer Article III standing.  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (time "to monitor [plaintiffs'] financial information do[es] not establish standing"); *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) ("Because plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury"); *Fus v. CafePress, Inc.*, No. 19-CV-06601, 2020 WL 7027653, at *4 (N.D. Ill. Nov. 30, 2020) (slip op.) (allegations plaintiff "expended time and money to protect himself from identity

theft and fraud after receiving notification of the data breach" do not confer standing).

Accordingly, Plaintiffs' "lost time" theory fails to confer standing.[3]

### 2.      Identity Fraud Related to Unemployment Benefits

Plaintiffs' next theory of injury – that cyber criminals may have used the disclosed

information to apply for unemployment benefits from state agencies – fails to confer standing for

at least two reasons.  (Compl. ¶¶ 58, 67, 73).  *First*, Plaintiffs have not alleged any facts

connecting the disclosure to any fraudulent application for unemployment benefits.  This

deficiency alone is fatal to Plaintiffs' standing theory.  *See TransUnion*, 2021 WL 2599472, at *7

(citing *Lujan*, 504 U.S. at 560-61) (noting that Plaintiff bears the burden of pleading facts

sufficient to show "that the injury was likely caused by the defendant").

*Second*, even if Plaintiffs had alleged facts connecting the disclosure to a fraudulent

application for unemployment benefits, this claim would still fail because the identity fraud

identified in the Amended Complaint was directed toward state governments, not the Plaintiffs.

Indeed, Plaintiffs do not allege that *they* lost *any* money, property, or entitlement to

unemployment benefits as a result of a fraudulent unemployment benefits claim allegedly filed in

their names.  *See Campbell v. Gaither*, No. 3:11-cv-190-FDW, 2011 WL 1838779, at *3

---

[3]*See also George D. v. NCS Pearson, Inc.*, No. CV 19-2814 (JRT/KMM), 2020 WL 3642325, at *3 (D. Minn. July 6, 2020) (slip op.) ("Plaintiff's allegations of an injury derived from the 'time and costs associated with dealing with the [d]ata [b]reach, such as the prevention of future identity theft and the inconvenience, nuisance, and annoyance of dealing with all other issues resulting from the [d]ata [b]reach' are insufficient" to "create an injury" that confers standing); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. CV-18-2970 PSG (GJSx), 2019 WL 6522843, at *5 (C.D. Cal. Aug. 19, 2019) (slip op.) (allegation of lost "'time and expenses related to monitoring financial accounts for fraudulent activity'" insufficient to establish an injury-in-fact); *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2017 WL 2880102, at *5 (N.D. Ill. July 5, 2017) ("mitigation expenses do not meet the injury-in-fact requirement"); *Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) ("general allegations of lost time are too speculative to constitute cognizable injury.").

(W.D.N.C. May 13, 2011) ("unemployment insurance fraud victimizes the state of North

Carolina" and does not confer standing on "members of the public").  Thus, the fraudulent

unemployment benefits claims allegedly submitted in Plaintiffs' names are insufficient to confer

standing.

### 3.      Anxiety, Emotional Distress, and Loss of Privacy

Plaintiffs' allegations of "anxiety," "emotional distress," and "loss of privacy," also fail

to establish a cognizable injury-in-fact.  (Compl. ¶¶ 58, 67, 73, 122).  Courts have repeatedly

held that these types of non-monetary injuries are insufficient to establish standing unless they

are accompanied by a physical injury.  *Meracle v. Child.'s Serv. Soc. of Wis.*, 149 Wis. 2d 19,

288-30, 437 N.W.2d 532, 533, 535 (1989) (holding plaintiffs could not maintain action for

emotional distress in the absence of any physical injury accompanying the claim); *Willey v. J.P.*

*Morgan Chase, N.A.*, No. 09-cv-1397 (CM), 2009 WL 1938987, at *10 (S.D.N.Y. July 7, 2009)

("claims for expenses related to credit monitoring, anxiety, emotional distress, and loss of

privacy . . . do[] not rise to the level of actual damages").  Here, the Amended Complaint is

devoid of any allegations of physical injuries to accompany Plaintiffs' alleged emotional injuries.

As a result, Plaintiffs' alleged anxiety and emotional distress do not confer standing.

### 4.      Expenses From Credit Freezes on Credit Reports

Plaintiffs' fourth theory, that they had to undertake tasks which require "payment of

money" (Compl. ¶ 86) and "costs associated with placing freezes on credit reports," fails to

confer standing for two independent reasons.  (*Id.* ¶ 122).  *First*, federal law makes credit freezes

free to consumers.  15 U.S.C. § 1681c-1(i)(2)(A).[4]  *Second*, even if that were not the case,

---

[4] *See also* Andrew Smith, *Free credit freezes are here,* FTC Consumer Info. (Sept, 21, 2018),
https://www.consumer.ftc.gov/blog/2018/09/free-credit-freezes-are-here.

numerous courts have held allegations that a plaintiff spent money to avoid a speculative future injury resulting from a data breach are insufficient to confer standing.  *See George D.,* 2020 WL 3642325, at *3 ("costs associated with dealing with the [d]ata [b]reach, such as the prevention of future identity theft . . . are insufficient" where the plaintiff has not also "alleged a substantial risk of future identity theft" because protecting against a "speculative threat cannot create an injury"); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, at *5 (allegations of "'expenses related to monitoring financial accounts for fraudulent activity'" do not establish an injury-in-fact because "mitigation expenses are only relevant if the risk of immediate harm— here, fraud and identity theft—is 'real and imminent.'"); *In re VTech Data Breach Litig.*, 2017 WL 2880102, at *5 ("without imminent harm, mitigation expenses do not meet the injury-in-fact requirement"); *Fus,* 2020 WL 7027653, at *4 (rejecting standing based on the spending of "money to protect himself from identity theft and fraud after receiving notification of the data breach" because "such 'mitigation expenses qualify as "actual injuries" only when the harm is imminent.'") (quoting *Lewert,* 819 F.3d at 967).  Accordingly, this theory also fails.

### 5.    Increased Risk of Fraud and Identity Theft in the Future

Finally, Plaintiffs speculate that they have been injured because at some unknown point in the future, a criminal *might* utilize their driver's license numbers in an unexplained way to commit identity theft.  (Compl. ¶ 122).  Standing, however, requires an actual or *imminent* future injury that is concrete and particularized, not speculation that a plaintiff might someday be injured in some unspecified way.  *Lujan*, 504 U.S. at 560; *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (allegations of "theft of names and driver's licenses" do not establish standing because "[w]ithout a hack of information

such as social security numbers, account numbers, or credit card numbers, there is no obvious, credible risk of identity theft that risks real, immediate injury").

Courts faced with data breach claims routinely analyze the *type* of information stolen in a data breach and have repeatedly held that the risk of future harm is too remote where the data at issue is not highly sensitive information such as social security numbers or payment card information.  *E.g.*, *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843 at *4; *Antman*, 2015 WL 6123054 at *10-*11; *In re Vtech Data Breach Litig.*, 2017 WL 2880102, at *4 (granting motion to dismiss because "the data stolen here did not include credit-card or debit-card information, or any other information that could easily be used in fraudulent transactions"); *Fus*, No. 19-CV-06601, 2020 WL 7027653, at *3 (because "none of [plaintiff's] personal or financial information exposed in the February 2019 data breach was particularly sensitive . . . the disclosure of such information does not expose [plaintiff] to a significant risk of identity theft or fraud").

*Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), demonstrates the high bar Plaintiffs must overcome to establish standing in the absence of an already manifest injury.  In *Remijas*, the court found that a plaintiff whose credit and debit card numbers were stolen had standing because credit and debit card numbers can readily be used to cause financial injury, and that fraudulent charges had, in fact, been incurred on the accounts of 9,200 individuals whose data was compromised.  Under those facts, there was nothing remote or speculative about the "certainly impending" financial harm.  794 F.3d at 692.  Here, there is no such impending financial harm.  Unlike credit card numbers, driver's license numbers cannot be used to directly injure Plaintiffs.  *See In re Uber Techs., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843 at *4 (whereas "the potential repercussions of a hack of one's social security number or

credit card information are straightforward . . . Plaintiff fails to explain *how* gaining access to one's basic contact information and driver's license number creates a credible threat of fraud or identity theft."); *Antman*, 2015 WL 6123054 at *10-*11 (holding "theft of names and driver's licenses" does not create a "credible risk of identity theft that risks real, immediate injury"). Moreover, unlike the plaintiff in *Remijas*, who identified thousands of class members who had been defrauded as a result of the breach, Plaintiffs cannot point to a single class member who lost money or property as a result of the alleged breach.  Because driver's license numbers, unlike credit card numbers, cannot be used to cause a direct financial harm to Plaintiffs, they cannot base their standing on a risk of future harm.  *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 846 (N.D. Ill. 2020) (dismissing complaint for lack of standing where "the data disclosed" was "far less likely to facilitate identity theft than the credit and debit card numbers at issue in *Remijas*").

### 6.     Maxim's Allegations Regarding Schwab and Klarna Fail Facially to Establish Standing.

Plaintiff Maxim's separate allegations regarding the opening of a Schwab brokerage account in his name (Compl. ¶¶ 62, 63) and an attempted purchase from Foot Locker using the Klarna app (*id.*) also fail to establish standing for several reasons.  To begin with, Maxim does not even attempt to allege that the opening of these accounts are related in any way to the data breach at issue in this lawsuit or that his driver's license number was used in connection with these accounts.  Nor does Plaintiff allege any cognizable injury, as he never claims that he suffered any financial harm and cannot plausibly allege any likely future harm from the alleged activity.  These omissions are not pleading oversights.  Plaintiff says so little because he cannot in good faith allege more.

*The Schwab Account*.  Plaintiff does not, nor could he plausibly, allege that his driver's license number was used to open the Schwab account.  As a matter of law, a broker dealer

11

requires a social security number, not a driver's license number, to open a brokerage account. 31 C.F.R. 1023.220(a)(2). Any assertion that the breach alleged in this action relates to the opening of the Schwab account fails because social security numbers were not involved. Moreover, the opening of a brokerage account, without more, is not a cognizable injury. Maxim does not allege the Schwab account was ever funded, let alone funded with Plaintiff's own monies. Nor does Maxim explain how he could lose money from the opening of an unfunded brokerage account.

*The Klarna Account.* The allegations regarding Klarna are likewise insufficient. Maxim does not, and cannot plausibly allege that the attempted purchase with his Klarna account (or one opened in his name) was connected to the data breach. Klarna is a publicly traded Swedish company that allows consumers to shop online at major retailers. As with most apps, very little information is required to open an account.[5] Maxim does not, nor could he plausibly, allege that a driver's license number was required to open the account, and he certainly does not allege that his driver's license number was used. And even if Maxim could plead any connection between his driver's license number and the opening of a Klarna account in his name, the mere opening of a Klarna account does not constitute a cognizable injury. Opening a Klarna account is free, and Maxim concedes the sole attempted transaction was declined. (Compl. ¶ 63). This is not surprising. Klarna requires users to provide valid bank account or credit card information to secure users' purchases.[6] Maxim does not allege either was disclosed by American Family.

---

[5] All that is required to open a Klarna account is an email. *See* https://app.klarna.com/login at "Create account" (Last accessed September 28, 2021).

[6] *See, e.g.*, https://www.klarna.com/us/customer-service/how-do-i-sign-up-for-4-interest-free-installments/ (explaining that to use Klarna a customer must "enter your credit ro debti card information. This is the card [Klarna will] use for your scheduled automatic payments") (Last accessed September 28, 2021).

Indeed, Maxim does not allege any of his bank accounts or credit cards were ever linked to Klarna at all.  Accordingly, Maxim has not alleged an injury.

     **B.**     **Under *TransUnion*, The DPPA Alone Is Insufficient to Confer Standing.**

Any attempt by Plaintiffs to salvage Count I (Violation of the DPPA) by asserting that any alleged violation of the DPPA confers standing under the statute fails in light of the Supreme Court's recent decision in *TransUnion*.  The Court in *TransUnion* unambiguously "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"  *Id.* at 2197 (quoting *Spokeo*, 136 S. Ct. 1540).

While Defendants are aware of one in-circuit district court decision, *Whitaker v. Appriss, Inc.*, allowing a DPPA claim to go forward under *Spokeo* in the absence of a particularized harm, that decision is contrary to both *Spokeo* and *TransUnion,* and has not been subjected to appellate review.  229 F. Supp. 3d 809, 814 (N.D. Ind. 2017).  To be sure, there are narrow exceptions to the rule that a statutory violation alone does not confer standing, but a DPPA violation is not one of them.  Under *TransUnion*, Plaintiffs lack Article III standing unless "the risk of future harm materialized" or "exposure to the risk itself" caused independent concrete harm.  141 S. Ct. at 2197.  Statutory violations confer standing only where "the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts."  *Id.* at 2200; *Spokeo, Inc.*, 136 S. Ct. at 1540.  As discussed in Section I(A), any harm in this action is quintessentially abstract, inchoate, and speculative.  (*See* Compl. ¶ 9 ("Plaintiffs' and the Class Members' PI *has been exposed* to those who should not have access to it") (emphasis added)).  Accordingly, Plaintiffs cannot rely on the DPPA to create standing for their claims.

13

## II.     PLAINTIFFS' CLAIMS SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

### A.     Count I (Violation of the DPPA) Fails Because Defendants Did Not Knowingly Disclose Plaintiffs' Data for an Impermissible Purpose.

Plaintiffs allege that American Family and Midvale violated the DPPA when criminals stole consumer data.  But the DPPA is not a cybersecurity statute.  Instead, the DPPA provides that "[a] person who knowingly obtains, discloses, or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."  18 U.S.C. § 2724(a).  To state a claim under the DPPA, Plaintiffs must allege facts plausibly demonstrating that "(1) the defendant knowingly obtaine[d], disclose[d], or use[d] personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted" under 18 U.S.C. § 2721(b).  *Hurst v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 10- 1001-GMS, 2012 WL 426018, at *10 (D. Del. Feb. 9, 2012), *aff'd* Oct. 24, 2012; *see also* 18 U.S.C. § 2724.

Plaintiffs' attempt to shoehorn a data breach into a DPPA claim fails because: (i) theft is not a "knowing" disclosure; and (ii) Defendants' purpose for collecting the information at issue was to rate and underwrite automobile insurance – a purpose expressly permitted under the DPPA.  18 U.S.C. § 2721(b)(6).  Accordingly, Plaintiffs have failed to allege the first and third elements of a DPPA claim, and thus Count I should be dismissed with prejudice.

### 1.     Plaintiffs Do Not Allege Defendants Made a Knowing Disclosure of Protected Information.

Plaintiffs do not allege facts plausibly demonstrating that either Defendant made a knowing disclosure of protected information as required to plead a DPPA claim.  Instead, the Amended Complaint asserts that non-party criminals stole Plaintiffs' personal information in a coordinated cyber attack.  (Compl. ¶¶ 5, 23).  To date, no court has ever applied the DPPA to

14

punish a company for information "disclosed" by theft.  This Court should not become the first.

Doing so would be inconsistent with the DPPA's legislative purpose of curtailing the practice of

states "selling personal information."   *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 944

(7th Cir. 2015).

Plaintiffs attempt to rescue their DPPA claim from the arguments in Defendants' original

motion to dismiss by adding the word "knowingly" to various allegations.  The addition of these

conclusory labels does not solve Plaintiffs' pleading problem.  For example, the Amended

Complaint alleges that Defendants knowingly structured their websites in certain ways, but the

setup of Defendants' websites is not the operative fact under the DPPA.  (Compl. ¶¶ 104

("Defendants knowingly publish information to the public on their respective free websites"),

105 ("Defendants knowingly linked their respective public websites to systems and/or networks

storing, maintaining, and/or obtaining Plaintiffs and Class Members' PI")).  To state a claim

under the DPPA, the *disclosure* of protected information itself must be knowing.  18 U.S.C.

§ 2724(a).  For this reason, courts have repeatedly held that the "theft of Plaintiff's

[information]" does not constitute a "knowing" disclosure under the DPPA.  *Enslin v. Coca-Cola

Co.*, 136 F. Supp. 3d 654, 671 (E.D. Pa. 2015); *see also McDonough v. Anoka Cnty.*, 799 F.3d

931, 957 (8th Cir. 2015); *Allen v. Vertafore, Inc.,* No. 4:20-cv-04139, 2021 WL 3148870, at *2

(S.D. Tex. June 14, 2021), report and recommendation adopted *sub nom* 2021WL 3144469 (S.D.

Tex. July 23, 2021) (disclosure of information as the result of a data breach does not constitute a

DPPA violation).   No "coherent understanding of the word disclose . . . would include theft."

*Enslin*, 136 F. Supp. 3d at 671 (citing *Holmes v. Countrywide Fin. Corp.*, No. 5:08-cv-00205-R,

2012 WL 2873892, at *16 (W.D. Ky. July 12, 2012) (considering a similar claim under the Fair

Credit Reporting Act and holding that theft by "a ne'er-do-well" does not constitute "furnish[ing]" or "transmit[ing]" information)).

*Allen* is directly on point.  2021 WL 3148870, at *2.  In *Allen*, the plaintiff brought a DPPA claim against Vertafore after the plaintiff's DPPA-protected information was disclosed in a Vertafore data breach.  The court dismissed the plaintiff's DPPA claim, holding that a data breach does not constitute a knowing disclosure because "anyone that may have obtained the data did so in an unauthorized manner, which undercuts the notion that Vertafore knowingly disclosed the data to those unauthorized individuals."  *Id.* at *4.

Similarly, in *McDonough*, the court rejected the plaintiffs' claims against the commissioners of state agencies that maintained a database from which law enforcement officers and employees could retrieve information protected by the DPPA.  *McDonough*, 799 F.3d at 938-39.  The court concluded plaintiff's claim that the commissioners "knowingly disclosed" protected  information by "failing to safeguard and monitor the database" was insufficient to state a DPPA claim, explaining that the failure to safeguard a database against impermissible use by third parties did not give rise to a DPPA claim.  *Id.* at 957.  Further, in *Enslin*, the court likewise found that allowing the plaintiff's driving records to be stolen by a third party does not constitute a DPPA violation.  136 F. Supp. 3d at 671.

Just as in *Allen*, *McDonough,* and *Enslin*, Defendants' alleged disclosure was the result of criminal misconduct of a third party.  The Court should follow *Allen*, *McDonough,* and *Enslin* and dismiss Count I.

## 2. The Only Disclosure Alleged in the Amended Complaint Was for a Proper Purpose.

Plaintiffs' claim also fails because they have not alleged, and cannot allege, that Defendants disclosed any information for an impermissible purpose.  The DPPA expressly

16

permits disclosure "by an insurer or insurance support organization . . . in connection with . . . rating or underwriting."  18 U.S.C. § 2721(b)(6).  Here, the only alleged disclosure occurred via Defendants' "online auto quote platform[]" which Plaintiffs admit "combines" information "entered by the website's visitor" with additional information, such as driver's license numbers, that Defendants "pull[ ]" in order "*to provide the visitor a quote*."  (Compl. ¶¶ 20-21) (emphasis added).  This allegation dooms Plaintiffs' DPPA claim.  Calculating the amount to charge an individual for insurance – *i.e.*, pricing automobile insurance – is the very definition of rating and underwriting.  The fact that cyber criminals obtained the data through felonious means does not change the fact that Defendants obtained and used the information for a proper purpose.  *See Allen*, 2021 WL 3148870, at *2 (considering a DPPA claim brought against "'an insurance software company that provides enterprise software solutions for the insurance industry'" and holding that the disclosure of information as the result of a data breach does not constitute a disclosure for an impermissible purpose under the DPPA).  Because 18 U.S.C. § 2721(b)(6) permitted Defendants to disclose protected information as part of the process of underwriting and rating automobile insurance, Plaintiffs have failed to satisfy the third prong of the DPPA as well.

> **B.     Count II (Negligence) and the Derivative Count III (Declaratory Judgment) Fail Because Plaintiffs Have Not Alleged an Actual Loss or Damages Resulting from the Alleged Negligence.**

Plaintiffs' negligence claim fails because Plaintiffs cannot satisfy the actual loss or damages element of such a claim.  To state a claim for negligence, Plaintiffs must allege: "'(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an *actual loss or damage* as a result of the injury.'" *Martindale v. Ripp*, 2001 WI 13, ¶ 33, 246 Wis. 2d 67, 629 N.W.2d 698, 707 (Wis. 2001) (emphasis added); *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77, 82-83

17

(N.Y. Ct. App. 2011); *Stockton v. Wake Cty.*, 173 F. Supp. 3d 292, 307 (E.D.N.C. 2016) ("a plaintiff asserting negligence must prove . . . certain actual injury or loss sustained by the plaintiff.").[7]

To recover under a negligence claim, a plaintiff must allege a "physical injury or damage to property." *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11, 14 (N.Y. Ct. App. 2013); *Fischer v. Ganju*, 168 Wis. 2d 834, 857, 45 N.W.2d 10 (1992) (causal nexus must exist between negligent act and resulting injury to recover damages). Plaintiffs allege neither. Instead, Plaintiffs offer four allegedly tortious injuries, similar to those that allegedly supported standing: (i) lost time spent dealing with the consequences of the alleged disclosure; (ii) "emotional distress"; (iii) loss of privacy solely because of theft; and (iv) the hypothetical possibility of unidentified future harms. Courts have repeatedly rejected all four of these theories.

*First*, courts have made clear that lost time alone is insufficient to satisfy the "actual loss or damage" element of a negligence claim. *See Shafran v. Harley- Davidson, Inc.*, No. 07 CIV. 01365 (GBD), 2008 WL 763177, at *2-*3 (S.D.N.Y. Mar. 20, 2008); *In re Gen Motors LLC Ignition Switch Litig.* 339 F. Supp. 3d 262, 309 (S.D.N.Y. 2018) (holding that under the law of both North Carolina and Wisconsin, lost personal time is not recoverable in tort); *see also Alsteen v. Wauleco, Inc.*, 2011 WI App 105, ¶ 18, 335 Wis. 2d 473, 802 N.W.2d 212, 218 (2011) (the need for ongoing monitoring does not constitute damages).

*Second*, claims of mental or emotional distress unaccompanied by other damages are likewise insufficient to satisfy the actual loss or damage element. *See Meracle*, 437 N.W.2d at

---

[7] Defendants are Wisconsin-based insurers. (Compl. ¶¶ 13, 14). Plaintiffs Baysal and Maxim are New York residents. (*Id.* ¶¶ 10, 11). Plaintiff Italiano is a resident of North Carolina. (*Id.* ¶ 12). Because the relevant portions of Wisconsin, New York, and North Carolina law are largely the same, the Court need not engage in a choice of law analysis.

533, 535 (holding plaintiffs could not maintain action for emotional distress in the absence of any physical injury accompanying the claim); *Willey*, No. 09-cv-1397 (CM), 2009 WL 1938987, at *9 ("Without actual misuse of personal information, [alleged] damages for humiliation [and] mental distress . . . are insufficient to support [a negligence] claim[].").

*Third*, courts have routinely rejected claims that theft or disclosure is itself an injury sufficient to state a claim for negligence. *See, e.g.*, *Alsteen*, 802 N.W.2d at 216 (mere exposure to dangerous conditions is not an actual injury); *Shafran*, 2008 WL 763177, at *1-3 (holding that theft of laptop containing plaintiff's personal information was not an injury sufficient to state a negligence claim); *In re Branch*, 569 B.R. 657, 672 (Bankr. E.D.N.C. 2017) (debtor's allegations that he was subjected to an increased likelihood that his personal information would be stolen or otherwise utilized for an improper purpose were insufficient to establish that he suffered damages as required to support a negligence claim under North Carolina law).

*Fourth*, Plaintiffs' theory that they may suffer "imminent and impending further injury arising from the increased risk of fraud and identity theft" is also insufficient. (Compl. ¶¶ 58, 67, 73). "The mere possibility of future harm" does not constitute an actual harm sufficient to sustain a negligence claim. *Brantner*, 360 N.W.2d at 532; *see also Caronia*, 5 N.E.3d at 14 ("[a] threat of future harm is insufficient to impose liability against a defendant in a tort context"); *In re Branch*, 569 B.R. at 672; *Curl*, 187 N.C. App. 649 at 656–57.[8]   Accordingly, Plaintiffs' "future injury" theory likewise fails.

---

[8] *See also Alsteen*, 802 N.W.2d at 216 (dismissing claim where plaintiff's risk of developing disease due to exposure by defendant "is, at present, a 'mere possibility,' and therefore is not an injury for which she can recover."); *Ivory*, 2012 WL 5680180, at *11 ("New York law requires an injury to sustain a tort cause of action, rather than the possibility of some future injury").

Plaintiffs' declaratory judgment claim (Count III) is derivative of Plaintiffs' negligence claim.  (Compl. ¶¶ 126 (alleging Defendants "owe[] a duty of care to Plaintiffs and Class Members"), 129 (alleging Defendants "caused actual harm because of Defendants' failure to fulfill their duties of care")).  The failure of Plaintiffs' negligence claim is thus fatal to Plaintiffs' declaratory judgment claim.  *Acosta v. Target Corp.*, 745 F.3d 853, 862 (7th Cir. 2014); *Bernstein v. Bankert*, 702 F.3d 964, 972 (7th Cir. 2012).  Accordingly, Count III should likewise be dismissed.

**CONCLUSION**

For the foregoing reasons, American Family and Midvale respectfully submit that Plaintiffs' claims all fail under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Consequently, the Amended Complaint and this action should be dismissed.

DATED: September 28, 2021                    Respectfully submitted,


SIDLEY AUSTIN LLP


By: */s/ Theodore R. Scarborough*
Theodore R. Scarborough
Christopher M. Assise (*pro hac vice*)
Stephen W. McInerney (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-2236
tscarborough@sidley.com
cassise@sidley.com
smcinerney@sidley.com

and

Sarah A. Zylstra, State Bar No. 1033159
BOARDMAN & CLARK LLP
1 South Pinckney Street, Suite 410
P.O. Box 927

20

Madison, WI 53701-0927
Telephone: (608) 257-9521
Facsimile: (608) 283-1709
szylstra@boardmanclark.com


*Attorneys for Defendants Midvale Indemnity
Company and American Family Mutual
Insurance Company, S.I.*

21

## CERTIFICATE OF SERVICE

I certify that on September 28, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Court in accordance with electronic filing procedures and served upon all counsel of record via the CM/ECF system.

/s/ *DRAFT*
Christopher M. Assise

271973093v.4