**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ALP BAYSAL, THOMAS MAXIM, and SANDRA ITALIANO individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIDVALE INDEMNITY COMPANY and AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 3:21-cv-00394-wmc<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

562747.2

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................1

III.  DEFENDANTS' STANDING ARGUMENTS CONTRADICT THIS COURT'S WELL-ESTABLISHED JURISPRUDENCE .................................................................5

      A.   Standard of Review................................................................................5

      B.   Plaintiffs Plausibly Plead Article III Standing..........................................5

           1.   Plaintiffs plead risk of future identity theft and harm................................6

           2.   Plaintiffs sufficiently plead loss of time. ....................................................9

           3.   Expenses resulting from fraud monitoring are a cognizable injury...........11

           4.   Plaintiffs' allegations of fraudulent applications for unemployment insurance benefits satisfy the injury-in-fact requirement...........................13

           5.   Plaintiffs' allegations of loss of privacy, anxiety, and emotional distress satisfy the injury-in-fact requirement.........................................................15

           6.   Plaintiff Thomas Maxim's allegations are sufficient to confer standing...16

      C.   Plaintiffs Have Standing for their DPPA Claim, Both Before and After *TransUnion*. ....................................................................................................................17

IV.   PLAINTIFFS' CLAIMS ARE WELL PLED AND SHOULD NOT BE DISMISSED UNDER RULE 12(b)(6)...........................................................................................20

      A.   Plaintiffs' DPPA Claim (Count I) is Well Pleaded................................................20

           1.   Defendants Disclosed Plaintiffs' Motor Vehicle Records.........................21

           2.   Defendants "Knowingly" Disclosed Plaintiffs' Motor Vehicle Records ..23

           3.   Defendants Did Not Disclose Plaintiffs' Motor Vehicle Records for a Permissible Use........................................................................................25

      B.   Plaintiffs' Negligence Claim and Claim for Declaratory Judgment (Counts II and III) are Adequately Pleaded, and Defendants' Motion Must Be Denied...............27

           1.   Plaintiffs Allege Actual Loss and Damages Supporting Their Negligence Claim.......................................................................................................27

2.    Plaintiffs Allege Recognized Damages and That Their Exposed Information Was Used to Commit Fraud.................................................................................28

V.    **CONCLUSION** ...........................................................................................................**33**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
725 F.3d 803 (7th Cir. 2013) .................................................................................................15

*In re Adobe Sys., Inc.*,
66 F.Supp.3d 1197 (N.D. Cal. 2014) ...........................................................................9, 11, 17

*Alam v. Miller Brewing Co.*,
709 F.3d 662 (7th Cir. 2013) ...................................................................................................5

*Alsteen v. Wauleco, Inc.*,
335 Wis. 2d 473 (2011) .........................................................................................................33

*Antman v. Uber Techs., Inc.*,
No. 3:15-CV-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ............................7, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................................20

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ...............................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................20, 28

*Bria Health Servs., LLC v. Eagleson*,
950 F.3d 378 (7th Cir. 2020) ...................................................................................................5

*Calderon-Ramirez v. McCament*,
877 F.3d 272 (7th Cir. 2016) ...................................................................................................5

*Campbell v. Gaither*,
No. 3:11-cv-190-FDW, 2011 WL 1838779 (W.D.N.C. May 13, 2011) ................................14

*Caronia v. Philip Morris USA, Inc.*,
5 N.E.3d 11 (N.Y. Ct. App. 2013) .....................................................................................32, 33

*Caudle v Towers, Perrin, Foster & Crosby, Inc.*,
580 F. Supp. 2d 273 (S.D.N.Y. 2008) ...................................................................................33

*Corona v. Sony Pictures Entm't*,
No. 14-CV-09600 RGK (Ex), 2015 WL 3916744 (C.D. Cal. June 15, 2015) .......................11

*Crabtree v. Experian Info. Sols, Inc.*,
No. 16 CV 10706, 2018 WL 1872112 (N.D. Ill. Apr. 17 2018), *aff'd*, 948 F.3d
872 (7th Cir. 2020)..................................................................................................15

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th Cir. 2015) ...........................................................................21, 26

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) ............................................................................28, 34

*Eggen v. Westconsin Credit Union*,
2016 WL 797614 (W.D. Wis. 2016).......................................................................18

*Enslin v. The Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd sub nom. Enslin v. Coca-Cola Co.*,
739 F. App'x 91 (3d Cir. 2018) ..............................................................................24

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ..............................................................................31

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) .......................................................28, 29, 30

*Fus v. CafePress, Inc.*,
No. 19-cv-06601, 2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) ..................7, 11, 12

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) ................................................................... *passim*

*George D. NCS Pearson, Inc.*, No. CV 19-2814, 2020 WL 3642325 (D. Minn.
July 6, 2020).................................................................................................9, 10, 12

*Gerber v. Herskovitz*,
No. 20-1870, 2021 WL 4187844 (6th Cir. Sept. 15, 2021) .....................................15

*Graczyk v. West. Pub. Co.*,
660 F.3d 275 (7th Cir. 2011) ................................................................17, 18, 19, 20

*Groshek v. Time Warner Cable, Inc.*,
865 F.3d 884 (7th Cir. 2017) ...................................................................................6

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ..................................................................................31

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................32

*Kylie S. v. Pearson PLC*,
    475 F.Supp.3d 841 (N.D. Ill. 2020) ..............................................................8

*Lewert v. P.F. Chang's China Bistro, Inc.*,
    819 F.3d 963 (7th Cir. 2016) ........................................................... *passim*

*Lexmark, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..............................................................................13, 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................5, 6

*Maracich v. Spears*,
    570 U.S. 48 (2013) ..........................................................................20, 21, 25

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ............................................................32

*McDonough v. Anoka Cnty*,
    799 F.3d 931 (8th Cir. 2015) ................................................................24, 25

*McMorris v. Carlos Lopez & Assocs., LLC*,
    995 F.3d 295 (2d Cir. 2021) .......................................................................31

*Meracle v. Children's Service Soc. of Wis.*,
    437 N.W.2d 532 (Wis. 1989) .....................................................................15

*Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*,
    861 F.3d 644 (7th Cir. 2017) ........................................................................5

*Pichler v. UNITE*,
    542 F.3d 380 (3d Cir. 2008) ...............................................................23, 24, 27

*Rahman v. Marriott Int'l, Inc.*,
    No. SACV2000654DOCKES, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021) ...........31

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d. Cir. 2011) ..........................................................................9

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) ........................................................... *passim*

*Rudolph v. Hudson's Bay Co.*,
    No. 18-CV-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May 7, 2019) .................30

*Senne v. Vill. of Palatine, Ill.*,
    695 F.3d 597 (7th Cir. 2012) ........................................................... *passim*

*Spokeo, Inc. v. Robins, Inc.*,
   136 S. Ct. 1540 (2016).......................................................................................... *passim*

*In re Supervalu, Inc.*,
   870 F.3d. 763 (8th Cir. 2017) ...............................................................................9

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (U.S. 2021)............................................................................19, 20

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) ...........................................................................12

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019)................................................................................31

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
   No. ML 18-2826 PSG, 2019 WL 6522843 (C.D. Cal. 2019)........................7, 11, 12

*Vertafore Allen v. Vertafore, Inc.*,
   4:20-CV-04139, 2021 WL 3148870 (S.D. Tex. June 14, 2021)..............................24

*In re VTech Data Breach Litig.*,
   No. 15 CV 10889, 2017 WL 2880102 (N.D. Ill. July 5, 2017) ....................8, 11, 12

*Walters v. Kimpton Hotel Rest. Grp., LLC*,
   No. 16-cv-05387-VC, 2017 WL 1398660 (N.D. Cal. Apr. 13, 2017)...............11, 17

*Warth v. Seldin*,
   422 U.S. 490 (1975)...............................................................................................15

*Welch v. Theodorides-Bustle*,
   677 F. Supp. 2d 1283 (N.D. Fla. 2010)...........................................................23, 26

*Whitaker v. Appriss, Inc.*,
   229 F.Supp. 3d 809 (N.D. Ind. 2017) ..............................................................18, 19

*White v. United States*,
   148 F.3d 787 (7th Cir. 1998) ................................................................................28

*Willey v. J.P. Morgan Chase, N.A.*,
   No. 09 Civ. 1397(CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009)....................15

*In re Yahoo!*,
   No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).........11, 17

**Statutes**

18 U.S.C. §§ 2721-2725 ................................................................................. *passim*

Driver's Privacy Protection Act ............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................................28, 34

Fed. R. Civ. P. 12(b)(6)............................................................................11, 15, 20, 34

## I.    INTRODUCTION

Defendants Midvale Indemnity Company ("Midvale") and American Family Mutual Insurance Company, S.I. ("American Family," and collectively, "Defendants") publicly exposed the driver's license numbers of hundreds of thousands of individuals, including Plaintiffs Alp Baysal, Thomas Maxim, and Sandra Italiano, for a period of at least two months in 2021. Defendants did so by configuring their website to include an "instant quote" feature set to automatically retrieve information from their databases and certain third parties' databases without verifying the identity of the person seeking the quote or restricting the ability of automated bot processes from accessing the quote platform. Because the "instant quote" feature was designed to auto-populate the driver's license number of any potential customer who visited the website, it contained huge swaths of information about both customers and non-customers such as Plaintiffs, who never sought an insurance quote or otherwise authorized Defendants to have or use their driver's license numbers. Unfortunately, during the time Defendants knowingly exposed that data to the world, hackers or other bad actors accessed it and then sold or misused it. Plaintiffs bring this litigation to remedy Defendants' misconduct and the ensuing damages. They have adequately pleaded that they have Article III standing to pursue their claims and have adequately pleaded their claims under the Driver's Privacy Protection Act ("DPPA"), for negligence and for declaratory and injunctive relief. Defendants' motion to dismiss should be denied.

## II.    FACTUAL BACKGROUND

Defendants sell insurance products, including car insurance, to Americans across the country. Compl. ¶¶ 2, 13-14. 18-20.[1]  Midvale promises to "protect the confidentiality of the information that we have about you by restricting access to those employees who need to know

---

[1] All references to the Complaint are to Plaintiffs' Amended Complaint – Class Action, filed August 30, 2021.  ECF No. 27.

5672747.3                                  1

that information to provide our products and services to you. We maintain physical electronic and procedural safeguards that comply with federal and state regulations to guard your information." *Id*. ¶ 2 American Family "recognize[s] the importance of our customers' trust. Keeping personal information confidential is a top priority for all American Family Insurance employees, agents and staff." *Id.*  Defendants failed to keep these promises: Defendants readily provided Plaintiffs' and putative Class Members' driver's license number to *anyone* who entered a person's name, address and/or date of birth into their on-line quoting system. Thus, customers, prospective customers, and even members of the public who were not even prospective customers, had this sensitive personal information made available to the public. *Id.* ¶ 3.

As part of their insurance sales business, Defendants operate a public-facing website that has an "instant quote" feature. *Id.* ¶¶ 20-23.  Defendants' quoting feature uses the information entered by website visitors, combines it with additional information, including driver's license numbers, by automatically retrieving matching information from databases and third parties, and uses the combined information to provide a quote for insurance. *Id.*  Defendants contract with a third-party "prefill supplier" that "prefills certain information in the online quoting form (such as driver's license number) after a consumer enters personal information into the form." *Id.* ¶ 21. For at least January through March 2021, when Defendants were notified by the third-party prefill supplier "of a spike in activity on the amfam.com quoting platform" this matching information – *including driver's license numbers* obtained from third parties – was essentially *publicly available* on the quoting platform with no identity verification due to Defendants' lax security practices. *Id.* ¶¶ 5-6, 23, 104-06, 131.

On March 18, 2021, American Family was notified by its third-party prefill supplier that Defendants' instant quote feature was being exploited by hackers using it to obtain driver's license

numbers and addresses of Plaintiffs and the members of the Class, which is referred to herein as the Unauthorized Data Disclosure. Compl. ¶¶ 6-7, 23-27. Defendants responded by taking the instant quote platform offline on March 19, 2021. *Id.* ¶¶ 6, 25-26. Defendants "blocked the activity," and, according to their amorphous and self-serving notices to the public, "enhanced our security controls." *Id.* Plaintiffs and the Class were not notified that their personal information ("PI"), including their driver's license numbers and addresses, were exposed for the time period between January 19 and 29, 2021 (Midvale), and between February 6 and March 19, 2021 (American Family). *Id.* ¶¶ 5, 25-26, 53, 60, 69. The Notices sent to Plaintiffs and members of the Class informed them that "unauthorized parties may have requested a quote in your name and may have obtained your driver's license number." *Id.* The Notices also confirmed that Plaintiffs were victims of the Unauthorized Data Disclosure despite a lack of prior relationship with Defendants, explicitly noting that Plaintiffs were only affected if they *hadn't* sought an insurance quote. *Id.* ¶¶ 25-26. The Notice encouraged affected individuals to use the identity theft protection service Defendants offered to "help protect you," and acknowledged the substantial and imminent increased risk of future harm (including identity theft) to Plaintiffs and the Class:

> We have reason to believe this data may be used to fraudulently apply for unemployment benefits in your name. Please carefully review any written communications you receive from your state's unemployment agency, especially if you have not applied for unemployment benefits. If you suspect that your data has been used to fraudulently apply for unemployment benefits, you should contact the relevant state unemployment agency immediately.

*Id.*

The PI at issue in the Unauthorized Data Disclosure – which includes at least driver's license numbers – is significantly more valuable than the loss of, for example, credit card information in a retail data breach, because, there, victims can cancel or close credit and debit card accounts. Driver's license numbers are difficult and highly problematic to change. *Id.* ¶ 35. In fact,

driver's license numbers are known targets for attacks like the Unauthorized Data Disclosure at issue here, because they are a "critical part of a fraudulent, synthetic identity." *Id.* ¶ 36. Driver's license numbers are "connected to . . . vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment . . . , doctor's office, government agencies, and other entities." *Id.* ¶ 37. In fact, "[h]aving access to that one number can provide an identity thief with several pieces of information they want to know about you. Next to your Social Security number, your driver's license is one of the most important pieces to keep safe from thieves." *Id.*

Each of the three named Plaintiffs was harmed by Defendants' failure to secure their PI. *Id.* ¶¶ 52-74. None of Plaintiffs Baysal, Maxim, or Italiano ever sought a quote for insurance of any kind from Defendants. *Id.* ¶¶ 10-12. Despite their having never authorized Defendants to have, use, or otherwise possess their driver's license numbers, each received a Notice from either Midvale (Baysal and Italiano) or American Family (Maxim) dated May 13, 2021 indicating that their driver's license number was subject to the Unauthorized Data Disclosure. *Id.* ¶¶ 25-26, 53, 60, 69. Each of Plaintiffs Baysal, Maxim, and Italiano spent time responding to the Unauthorized Data Disclosure, and continues to work to keep their PI secure. *Id.* ¶¶ 55-56, 64-65, 70-71. In addition, Plaintiff Baysal, following the Unauthorized Data Disclosure, was subject to unemployment benefits fraud in New York. *Id.* ¶¶ 54, 58-59. Plaintiff Maxim, following the Unauthorized Data Disclosure, was subject to unemployment benefits fraud in New York, received a letter from Charles Schwab regarding a fraudulent brokerage account opened in his name, and was subject to additional identity theft as detailed in the Complaint. *Id.* ¶¶ 61-63, 67-68.

### III. DEFENDANTS' STANDING ARGUMENTS CONTRADICT THIS COURT'S WELL-ESTABLISHED JURISPRUDENCE

#### A. Standard of Review

Defendants bring this motion to dismiss Plaintiffs' Complaint under Rules 12(b)(1) and 12(b)(6). When deciding a motion to dismiss, the district court must "accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 381-82 (7th Cir. 2020) (internal quotations omitted); *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2016).

In the context of a motion to dismiss under Rule 12(b)(1), "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotations omitted) (alternations added). On a motion to dismiss for failure to state a claim, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 648 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007)).

#### B. Plaintiffs Plausibly Plead Article III Standing.

Standing under Article III requires a showing of (1) an injury-in-fact that is concrete, particularized, actual, and imminent; (2) a causal connection between the injury and the conduct complained of so that the injury is fairly traceable to the challenged action of the defendant; and

5672747.3                                    5

(3) that it is likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560. Here, Defendants challenge only one element of standing: injury-in-fact. To establish injury-in-fact, Plaintiffs must show that they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Groshek v. Time Warner Cable*, *Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (quoting *Spokeo, Inc. v. Robins, Inc.*, 136 S. Ct. 1540, 1548 (2016)) (internal quotations omitted). Injury-in-fact need not be tangible, however, and risk of harm can satisfy the injury-in-fact requirement. *See Spokeo*, 136 S. Ct. at 1549. Plaintiffs sufficiently plead injury-in-fact, and Defendants' contentions to the contrary are meritless. Plaintiffs plausibly allege numerous injuries caused by Defendants' conduct, all of which satisfy Article III standing. Throughout their brief in support of their motion, Defendants ignore the Seventh Circuit's well-established framework for analyzing injury-in-fact, relying on inapplicable case law from other Circuits and cherry-picking language from inapposite authority. Defendants also confuse the injury-in-fact element of Article III standing with causation standards governing their substantive negligence claims. Thus, Defendants' arguments fail.

1.      *Plaintiffs plead risk of future identity theft and harm.*

Many of Defendants' arguments about Plaintiffs' specific injuries are premised on their erroneous contention that Plaintiffs cannot establish a substantial risk of identity theft or fraud. *See, e.g.*, Defendants' Motion to Dismiss the First Amended Complaint ("Def. Mem.") (ECF No. 30) 6, 8-11. Specifically, Defendants assert that because the specific information compromised during the Unauthorized Data Disclosure does not include social security numbers or payment card information, Plaintiffs' allegations are insufficient to show a risk of future identity theft. These arguments are wrong; the allegations in the cases cited by Defendants were insufficient because they did not show *how* the compromised information could lead to identify theft. These decisions

did not announce any binding, categorical rule for injury-in-fact based on the type of information disclosed; they ruled on pleading deficiencies that are not present here.

For example, although the court in *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) concluded that the theft of names and driver's license numbers did not create injury-in-fact, it did so only because the complaint's allegations failed to demonstrate how the disclosure of names and driver's licenses could lead to the risk that money would be taken from accounts or that there would be fraudulent use of credit. *Antman*, 2015 WL 6123054, at *10-11. According to the *Antman* court, this risk was not credible without allegations that social security numbers, account numbers, or credit card numbers were compromised, which the plaintiffs there did not allege. *Id.* Importantly, *Antman* left open the question of whether the misappropriation of a plaintiff's name and driver's license number could constitute injury-in-fact. *Id.* at *11.[2]; *see also In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. ML 18-2826 PSG (GJSx), 2019 WL 6522843, at *4 (C.D. Cal. 2019) ("Plaintiff fails to explain *how* gaining access to one's basic contact information and driver's license number creates a credible threat of fraud or identity theft") (emphasis in original).

Similarly, in *Fus*, the court held that plaintiffs failed to establish injury-in-fact because they did not allege how the exposure of *only* a credit card's expiration date could lead to identity theft, without more information. *Fus v. CafePress, Inc.*, No. 19-cv-06601, 2020 WL 7027653, at *4 (N.D. Ill. Nov. 30, 2020) ("failure to truncate a credit card's expiration date, without more, does not heighten the risk of identity theft.") (quoting *Myers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d

---

[2] The plaintiff's attorney argued that misappropriation of the plaintiff's name and driver's license number could constitute injury-in-fact, but did so only through a declaration and at oral argument. Accordingly, the court did not consider that argument. *Antman*, 2015 WL 6123054, at *11.

724, 727-28 (7th Cir. 2016)). Finally, although the information compromised in *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2017 WL 2880102, at *4 (N.D. Ill. July 5, 2017) included names, addresses, login credentials, and birthdates, the court determined there was no injury-in-fact because the plaintiffs "fail[ed] to make the connection between the data breach they allege and the identity theft they fear," as they did "not explain how the stolen data would be used to perpetuate identify theft." *See also Kylie S. v. Pearson PLC*, 475 F.Supp.3d 841, 846-47 (N.D. Ill. 2020) (relying on *VTech* to conclude that without additional information, the disclosure of names, birthdays, and email addresses did not create an imminent risk of fraudulent transactions).

Here, by contrast, Plaintiffs sufficiently allege how the disclosure of their driver's license numbers and addresses could result in harm that is sufficiently likely to occur – and has, in fact resulted in identity theft for two named Plaintiffs. Plaintiffs allege that unauthorized users obtained their driver's license numbers through Defendants' instant quote system. Compl. ¶¶ 21-23. Driver's license numbers are sold on the dark web where bad actors can create fraudulent, synthetic identities and make Plaintiffs susceptible to fraudulent charges and identity theft. *Id.* ¶¶ 31-32, 36. Indeed, driver's license numbers are highly valuable, as bad actors use them to access vehicle registrations, insurance policies, apply for unemployment insurance benefits, and obtain records on file with DMVs, doctors' offices, and government agencies. *Id.* ¶¶ 36-38. To be sure, executives of security firms acknowledge that driver's license numbers are a "gold mine for hackers" which, unlike credit and debit card numbers, are far more difficult to replace. *Id.* ¶¶ 35, 38. Critically, Defendants acknowledged that identify theft could result from the disclosure of driver's license numbers, as they encouraged Plaintiffs to review communications from their state unemployment agencies, offered free credit monitoring services, and provided information on how to access credit reports. *See, e.g.*, *Id.* ¶¶ 25-26. And in fact, two of three named Plaintiffs experienced fraudulent

5672747.3

8

activity on their accounts, *in the manner that Defendants warned would occur*, following the Unauthorized Data Disclosure. *Id.* ¶¶ 54, 58, 61-63, 67, 68. Accordingly, Plaintiffs' allegations are consistent with other data breach cases in the Seventh Circuit where plaintiffs' risk of future harm was imminent. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (Article III standing existed where plaintiffs' alleged how the data breach would give an "incentive for hackers to . . . assume consumers' identities"); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) (Plaintiffs "should not have to wait until hackers commit identity theft or credit-card fraud in order to give the class standing.") (discussing *In re Adobe Sys., Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1214 (N.D. Cal. 2014)). Plaintiffs sufficiently allege future risk of identity theft or fraud to establish injury-in-fact.

### 2. *Plaintiffs sufficiently plead loss of time.*

Defendants' attempt to discredit Plaintiffs' allegations of lost time similarly fails. Defendants base their argument on *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d. Cir. 2011) and *In re Supervalu, Inc.*, 870 F.3d. 763, 770 (8th Cir. 2017) where courts held that allegations of lost time did not establish injury-in-fact. But those courts based their holdings on their position that in order for allegations of lost time to be valid, there must have been *actual misuse* of the plaintiffs' data. *Reilly*, 664 F.3d at 44 ("Appellants have alleged no misuse, and therefore, no injury."); *SuperValu*, 763 F.3d at 770-771 ("[A] mere possibility is not sufficient for injury-in-fact"). In other words, by requiring allegations of actual misuse, the Third and Eighth Circuits deviate from the rule in the Seventh Circuit governing this case, which confers standing through lost time if there is a future risk of harm based on a hacker's ability to access the compromised information and commit identity theft or fraud.[3] *See Lewert*, 819 F.3d at 965, 967; *Remijas*, 794 F.3d at 693; *see*

---

[3] Defendants' reliance on *George D. NCS Pearson, Inc.*, No. CV 19-2814, 2020 WL 3642325, at *3 (D. Minn. July 6, 2020) is misplaced, as the court there required the plaintiffs to

*also Galaria v. Nationwide Mut. Ins. Co.*, 663 Fed. Appx. 384, 388 (6th Cir. 2016) (Plaintiffs alleged injury when they alleged they "must expend time and money" to monitor their account despite not being certain their data will be misused); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017). The Court should reject Defendants' attempt to analyze Plaintiffs' injuries under principles contrary to Seventh Circuit precedent.

Here, Plaintiffs clearly allege lost time. Compl. ¶¶ 52, 55, 56, 64, 65, 70, 71. Further, Plaintiffs allege how the Unauthorized Data Disclosure made them susceptible to the risk of identity theft or fraud. Unauthorized users with Plaintiffs' names and addresses only targeted Defendants' instant quote system, giving them the ability to obtain  Plaintiffs' driver's license numbers. *Id.* ¶¶ 21-23. Hackers and other bad actors can easily use Plaintiffs' driver's license numbers to access vehicle registrations and insurance policies and to obtain records on file with DMVs, doctors' offices, and government agencies. *Id.* ¶¶ 36-38. With access to a driver's license number, a hacker can create fraudulent IDs, use those IDs wherever such verification is required, and create scams by impersonating government agencies and sending malicious links or attachments. *Id.* ¶ 38. Even if the Court deviates from the Seventh Circuit and requires Plaintiffs to allege actual misuse of their data in order to establish injury-in-fact through lost time, Plaintiffs make such allegations, as they provide examples of fraudulent unemployment insurance benefits applications, a fraudulent attempt to open a brokerage account, and a fraudulent attempt to make a retail purchase – responding to each of these instances of identity theft required huge expenditures of time by Plaintiffs. *Id.* ¶¶ 54, 58, 61-63, 67, 68. Plaintiffs sufficiently plead loss of time. *See Lewert*, 819 F.3d at 965, 967.

---

allege harm caused by the stolen information, thus following a rule inconsistent with the Seventh Circuit's precedent. *Id.* at *2-3 (citing *SuperValu*, 870 F.3d at 769-70).

5672747.3                                        10

The other cases Defendants cite are inapposite. The court in *Uber* declined to confer standing based on lost time because the plaintiffs failed to establish an imminent risk of identity theft and fraud. *Uber*, 2019 WL 6522843, at *4-5. As mentioned above, the *Uber* plaintiffs could not show a future risk of identity theft or fraud because, unlike Plaintiffs here, they failed to explain *how* the disclosure of driver's license numbers could lead to credit card fraud and the theft of funds from their accounts. *Id.* at *4. *Fus* and *VTech* are inapplicable for similar reasons, as the plaintiffs in those cases failed to show how the data compromised, credit card expiration dates in *Fus* and names, addresses, login information, and birthdates in *VTech*, could create a cognizable risk of identity theft or fraud. *Fus*, 2020 WL 7027653, at *4; *VTech*, 2017 WL 2880102, at *4. Finally, *Corona v. Sony Pictures Entm't*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) is not persuasive, as the court's discussion of lost time was in the context of whether it satisfied an element of a state-law negligence claim for purposes of Fed. R. Civ. P. 12(b)(6), not for the injury-in-fact requirement of Article III standing. Defendants' arguments miss the mark.

### 3. *Expenses resulting from fraud monitoring are a cognizable injury.*

Defendants' argument regarding the expenses Plaintiffs incurred utilizes the same flawed logic as their lost time argument. Def. Mem. at 8-9. In addition to credit freezes, Plaintiffs allege that they spent money on the prevention, detection, and recovery of unauthorized use of their PI, and also incurred lost opportunity costs and suffered from lost productivity through the time and effort they spent researching how to prevent, detect, and recover from fraud and identity theft. Compl. ¶¶ 52, 55, 56, 64, 65, 70, 71, 83, 122. Courts routinely find such allegations confer standing. *See Lewert*, 819 F.3d at 967; *Remijas*, 794 F.3d at 694; *Galaria*, 663 Fed. Appx. at 388; *In re Yahoo!*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *15 (N.D. Cal. Aug. 30, 2017); *Adobe*, 66 F. Supp. at 1216-17; *Walters v. Kimpton Hotel Rest. Grp., LLC*, No. 16-cv-05387-VC,

2017 WL 1398660, at *1 (N.D. Cal. Apr. 13, 2017). Like the plaintiffs in those cases, Plaintiffs' costs were expended to mitigate their substantial risk of future identity theft. They allege how hackers could target their driver's license numbers by breaching Defendants' inadequate data security; how bad actors could use their driver's license numbers to access vehicle registrations, insurance policies, and records on file with DMVs, doctors' offices, and government agencies; and that these step were in fact taken, resulting in the misuse of Plaintiffs' PI. Compl. ¶¶ 21-23, 36-38, 54, 58, 61-63, 67-68.

Defendants rely on the same inapposite cases to argue Plaintiffs' expenditures are not cognizable injury, but as discussed above, those comparisons fail. *See Fus*, 2020 WL 7027653, at *4 (holding there was no risk of identity theft and fraud, and therefore mitigation costs were not sufficient for injury-in-fact, because plaintiffs failed to allege how compromised credit card expiration dates could lead to harm); *VTech*, 2017 WL 2880102, at *4 (holding there was no risk of identity theft and fraud, and therefore mitigation costs were insufficient for injury-in-fact, because the plaintiffs failed to show exposed names, birthdates, login information, and addresses could lead to harm); *Uber*, 2019 WL 6522843, at *1, 4-5 (holding there was no risk of identity theft and fraud, and therefore mitigation costs were insufficient for injury-in-fact, because the plaintiffs failed to show how exposed names, addresses, and driver's licenses could lead to fraudulent activity in their financial accounts). Defendants' reliance on *George D.* is also misplaced because the District of Minnesota used the Eighth Circuit's standard for injury-in-fact which, unlike the Seventh Circuit's standard, requires plaintiffs to plead an actual misuse of the stolen information. *George D.*, 2020 WL 36423255, at *2 (citing *Supervalu*, 870 F.3d at 769-70); *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021) (recognizing a circuit split regarding injury-in-fact in data breaches and explaining the Seventh

and Eighth Circuits have opposite approaches). Defendants' argument fails and Plaintiffs have established cognizable injury sufficient to confer Article III standing.

> 4.  *Plaintiffs' allegations of fraudulent applications for unemployment insurance benefits satisfy the injury-in-fact requirement.*

Defendants' argument regarding fraudulent applications for unemployment insurance benefits misses the mark. First, despite couching their argument in terms of Article III's injury-in-fact requirement, Defendants appear to argue that Plaintiffs have failed to show causation. *See* Def. Mem. at 7 ("Plaintiffs have not alleged facts connecting the disclosure to any fraudulent application for unemployment benefits."). This contention fails.

The standard for pleading causation to establish Article III standing is low; in *Remijas*, the Seventh Circuit held that "it is enough at [the pleading] stage of the litigation that Neiman Marcus admitted 350,000 cards might have been exposed and that it contacted members of the class to tell them they were at risk." *Remijas*, 794 F.3d at 696; *see also Lexmark, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n. 6 (2014) ("Proximate causation is not a requirement of Article III standing."); *Galaria*, 663 Fed. Appx. at 390 ("[Causation] is not focused on whether defendant caused the plaintiff's injury in the liability sense, because causation to support standing is not synonymous with causation to support a claim.") (internal quotations and citations omitted).

Here, Plaintiffs make allegations analogous to those in *Remijas*. Defendants admitted that at least 283,734 driver's licenses were exposed and contacted Plaintiffs and Class Members about the risk of unemployment insurance benefits fraud. Compl. ¶¶ 7, 23-26. Defendants' assertion that Plaintiffs "have not alleged any facts connecting the disclosure to the fraudulent application" is without merit, as this inquiry goes to the merits of the suit and is inappropriate for an analysis of standing. *See Lewert*, 819 F.3d at 969 (concluding that arguments about the plaintiffs' ability to attribute fraudulent charges to the data breach should be "pursue[d] at the merits phase"). And, in

5672747.3                                    13

fact, Plaintiffs allege both a temporal and logical connection between the Unauthorized Data Disclosure and the fraud suffered by two named Plaintiffs. *See* Compl. ¶¶ 52-74. As a result, Plaintiffs sufficiently allege how the disclosure of their driver's license numbers can lead to identify theft and fraud, including unemployment insurance benefits fraud. *See* Sections I(A)(1)-(3), *supra*.

Next, Defendants' proposition that Plaintiffs cannot be victims of unemployment insurance benefits fraud is baseless. The only authority Defendants provide in support is *Campbell v. Gaither*, No. 3:11-cv-190-FDW, 2011 WL 1838779, at *3 (W.D.N.C. May 13, 2011), an opinion dismissing a *pro se* complaint seeking relief against an individual who was allegedly receiving unemployment insurance benefits, fraudulently. Unlike here, the plaintiff in *Gaither* did not allege that *his* name or information was compromised or stolen. Rather, the *pro se* plaintiff simply accused someone else of fraudulently receiving unemployment insurance benefits, and the court properly concluded that the plaintiff had no standing to pursue a claim alleging that conduct. Tellingly, Defendants only quote part of a sentence from that opinion in their parenthetical quotation—not the whole sentence. The whole sentence reads, "[i]nstead, *the alleged* unemployment fraud victimizes the state of North Carolina and its citizens as whole, which is insufficient to provide standing." *Id.* at *3 (emphasis added). In the specific context of *Gaither*, this statement is sensible, as the *pro se* plaintiff was simply accusing and suing another person for alleged unemployment insurance benefits fraud without any allegations that *his* information and identity had been jeopardized. Here, by contrast, Plaintiffs clearly show how the Unauthorized Data Disclosure compromised *their* driver's license numbers and how that disclosure could and did lead to unemployment insurance benefits fraud, further evinced by Defendants' warning that

5672747.3                                        14

Plaintiffs could become victims of such fraud. Compl. ¶¶ 21-23, 25-28, 36-38, 54, 58-59, 61-63, 67-68.

> 5.     *Plaintiffs' allegations of loss of privacy, anxiety, and emotional distress satisfy the injury-in-fact requirement.*

With respect to Plaintiffs' injuries of loss of privacy, anxiety, and emotional distress, Defendants incorrectly apply substantive pleading requirements to their ill-founded standing argument. This is improper. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

The two cases Defendants cite, *Meracle v. Children's Serv. Soc. of Wis.*, 437 N.W.2d 532, 533, 535 (Wis. 1989) and *Willey v. J.P. Morgan Chase, N.A.*, No. 09 Civ. 1397(CM), 2009 WL 1938987, at *10 (S.D.N.Y. July 7, 2009), are inapplicable. Both cases are about whether emotional distress damages were sufficiently pleaded to survive a Rule 12(b)6) motion to dismiss rather than whether such allegations suffice for Article III standing in the context of a Rule 12(b)(1) motion. The substantive claim in *Meracle* involved facts inapplicable to this case, and *Willey* only addressed anxiety and emotional distress damages in the context of "an element of each of Willey's state law claims." *Meracle*, 437 N.W.2d at 533, 535; *Willey*, 2009 WL 1938987, at *9. Neither case involved a motion to dismiss for lack of subject matter jurisdiction. *See Meracle*, 437 N.W.2d at 533-535; *Willey*, 2009 WL 1938987, at *9-10; *see also Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013) ("Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery. The fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed."). Contrary to Defendants' position, federal courts acknowledge that allegations of emotional distress without physical injury suffice for injury-in-fact. *See Gerber v. Herskovitz*, No. 20-1870, 2021 WL 4187844, at *3 (6th Cir. Sept. 15, 2021) (Emotional distress "fits that bill" of Article III injury-in-fact); *see also Crabtree v. Experian Info.*

*Sols, Inc.*, No. 16 CV 10706, 2018 WL 1872112, at *3 (N.D. Ill. Apr. 17 2018), *aff'd*, 948 F.3d 872 (7th Cir. 2020) (concluding that plaintiff did not provide facts sufficient at summary judgment to establish standing through emotional distress, but nonetheless stating "emotional distress can be a proper basis for standing.").

Here, Plaintiffs plausibly allege how the Unauthorized Data Disclosure caused them loss of privacy, emotional distress, and anxiety. Plaintiffs had their personal information and driver's license numbers compromised despite never seeking an insurance quote from Defendants. Compl. ¶¶ 7, 9, 25-26. As a result, they either became, or face an imminent threat of becoming, a victim of identity theft. In addition, as alleged in the Complaint, they face harassment from would-be stalkers in-person and online, subjecting them to loss of privacy, harassment, and emotional distress. *See id.* ¶¶ 7, 9, 25-26, 40-43, 53-54, 58-59, 61-62, 67-68, 73-74, 77, 81, 83, 122.

> 6.      *Plaintiff Thomas Maxim's allegations are sufficient to confer standing.*

Defendants make two general arguments about why Plaintiff Maxim's alleged injuries cannot confer standing, and both of them fail. First, Defendants surmise that the Unauthorized Data Disclosure could not have resulted in the opening of the Charles Schwab account and the unauthorized charge at Footlocker shown on his Klarna account. *See* Compl. ¶¶ 62-64. Second, Defendants argue that because Plaintiff Maxim did not specifically allege that he lost money due to this unauthorized activity, his allegations do not confer standing. Defendants' arguments are erroneous.

Like their argument regarding fraudulent unemployment applications, Defendants attempt to invalidate Plaintiffs' allegations of injury-in-fact on substantive causation grounds, *i.e.*, that the Unauthorized Data Disclosure could not have caused the fraudulent opening of a Charles Schwab account or the unauthorized Footlocker purchase through Klarna. As described above, establishing

5672747.3                                        16

causation for Article III standing is a low bar. *Lexmark*, 572 U.S. at 134 n.6; *Remijas*, 794 F.3d at 696; *Galaria*, 663 Fed. Appx. at 390. Here, Plaintiffs sufficiently plead how the Unauthorized Disclosure could have led to such fraudulent activity, through allegations that a bad actor with access to their driver's license numbers could open and gain access to Plaintiffs' accounts. Compl. ¶¶ 40, 43, 122.

Next, Defendants argue that the fraudulent activity Plaintiff Maxim experienced must have resulted in financial harm in order for it to confer standing. *See* Def. Mem. at 11-13. But as demonstrated above, injury-in-fact can be established through tangible and intangible[harms] including through loss of time and out-of-pocket expenses. *See Spokeo*, 136 S. Ct. at 1549; *Lewert*, 819 F.3d at 965, 967; *Galaria*, 663 Fed. Appx. at 388 (Plaintiffs demonstrated injury-in-fact when alleged they "must expend time and money" to monitor their account despite not being certain their data will be misused); *Yahoo!*, 2017 WL 3727318, at *15; *Adobe*, 66 F. Supp. at 1216-17; *Walters*, 2017 WL 1398660, at *1. Here, Plaintiff Maxim sufficiently alleges that in response to fraudulent activity affecting his Charles Schwab and Klarna accounts, he spent time contacting Charles Schwab, Klarna, Footlocker, and the credit bureaus. Compl. ¶ 64-65, 67-68. These allegations suffice for injury-in-fact.

### C. Plaintiffs Have Standing for their DPPA Claim, Both Before and After *TransUnion*.

Defendants' claim that violation of the Drivers' Privacy Protection Act is insufficient to confer standing is simply wrong. Def. Mem. at 13. As an initial matter, Defendants omit to mention controlling Seventh Circuit law that holds the DPPA confers standing on Plaintiffs: "The DPPA protects individuals from certain uses or disclosures of their personal information and creates a federal right of action for the same." *Graczyk v. West. Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011). "Congress has defined the relevant injury under the DPPA as the 'obtain[ment],

disclos[ure], or [use]," 18 U.S.C. § 2724(a), of an individual's personal information." *Id.* Thus, where, as here, Plaintiffs have alleged "a disclosure or use of the plaintiffs' personal information that is prohibited by the DPPA . . . [t]he plaintiffs have therefore alleged an injury in fact . . . that would be redressed by a decision in their favor, and so they have standing to bring this case. *Id.*

Defendants also fail to mention that a court in this district has recognized that *Graczyk* holds plaintiffs have standing when allege a disclosure in violation of the DPPA: "[T]hat type of injury [such as identity theft] is not required to confer standing for a violation of the [DPPA;] . . . plaintiff has standing to sue under Act if she alleges that defendant obtained, used or disclosed personal information in violation of the Act[]." *Eggen v. Westconsin Credit Union*, No. 14-cv-873-bb, 2016 WL 797614, *2 (W.D. Wis. Feb. 26, 2016) (citing *Grazcyk*, 660 F.3d at 278).

Although Defendants do mention *Whitaker v. Appriss, Inc.*, 229 F.Supp. 3d 809 (N.D. Ind. 2017) as "one in-circuit district court decision" that is contrary to their position that Plaintiffs here do not have standing under the DPPA, they fail to examine that court's detailed reasoning under both the Seventh Circuit's *Graczyk* and the Supreme Court's subsequent holding in *Spokeo v. Robins*, 136 S.Ct. 1540 (2016). As the court in *Whitaker* explains: "In Congress's judgment, once a plaintiff's information is disclosed or obtained for a prohibited purpose, the damage is already done." *Id.* at 815. Furthermore, "the DPPA creates a legally protected interest in a consumer's personally identifiable information. In statutes like these, *disclosing the personal information is the harm.*" *Id.* at 816 (emphasis added) (internal citations omitted). Thus, under *Graczyk*, alleging a DPPA violation confers standing. As the *Whitaker* court further explains:

> "*Spokeo* doesn't overturn, but narrows, our court of appeal's earlier holding that impermissible disclosure of a plaintiff's personal information in violation of the DPPA confers standing . . . . *Graczyk*'s ultimate conclusion still survives, but *Spokeo* just carves out completely harmless violations, such as [the disclosure of a person's first name alone, without last name, address, or social security. This might violate the letter of the DPPA, but it presents no actual risk to privacy]."

229 F. Supp. 3d at 814-15. This case does not involve the type of harmless violation, such as "the disclosure of a person's first name alone," that *Spokeo* carved out from Article III standing. Here, Defendants acknowledge that third parties were able to connect protected drivers' license numbers to names and addresses through their online quoting platform. Compl. ¶¶ 25-26. Thus, Plaintiffs have standing to assert their DPPA claim.

Contrary to Defendants' threadbare assertion, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197 (2021) does not alter this analysis or revoke Plaintiffs' DPPA standing under *Graczyk* and *Spokeo*. *TransUnion* explicitly affirms *Spokeo*'s holding that "[v]arious intangible harms can [] be concrete. . . . for example, *disclosure of private information*. . . ." *Id.* at 2204. The Supreme Court in *TransUnion* had "no trouble" concluding that class members whose credit reports containing false information in violation of the Fair Credit Reporting Act *were provided to a third party* had "suffered a concrete harm that qualifies as an injury in fact." *Id.* at 2208-09. No showing was required to establish standing beyond *provision of the credit reports to third parties*. *Id.* The only plaintiffs whom *TransUnion* found lacked Article III standing were those whose inaccurate credit reports "mere[ly] exist[ed] . . . in a data base" at TransUnion, and indisputably *had never been disclosed to a third party*. 141 S. Ct. at 2209-10. This case involves much more than Plaintiffs' DPPA-protected motor vehicle records "mere[ly] exist[ing] . . . in a data base." *Id.* Defendants acknowledge that they "believe" they disclosed *driver's license numbers (connected to names and addresses) to third parties* through Defendants' online quoting platform and that Plaintiffs were impacted by these disclosures. Compl. ¶¶ 25-27. Such disclosure is the concrete harm that Congress sought to protect under the DPPA, and continues to provide Plaintiffs with standing under *Graczyk*, *Spokeo*, and now *TransUnion*.

## IV.   PLAINTIFFS' CLAIMS ARE WELL PLED AND SHOULD NOT BE DISMISSED UNDER RULE 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint need only allege sufficient facts to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "assum[e] that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. "Rule 12(b)(6) does not countenance [] dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556.

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not ... accept a plaintiff's legal conclusions." *Twombly*, 550 U.S. at 556. The Complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the Plaintiffs. *Twombly*, 550 U.S. at 554–56.

### A.   Plaintiffs' DPPA Claim (Count I) is Well Pleaded.

The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724. In enacting the DPPA, Congress was motivated by its "[c]oncern[ ] that personal information collected by States in the licensing of motor vehicle drivers was being released — even sold — with resulting loss of privacy for many persons." *Maracich v. Spears*, 570 U.S. 48, 51-52 (2013) (citing 18 U.S.C. §§ 2721-2725). Consequently, "[t]he DPPA regulates the disclosure of personal information contained in the records of state motor vehicle departments." *Id*. at 52. Disclosure of such information is prohibited unless made "for a purpose permitted by an exception listed in 1 of 14 statutory subsections." *Id*. (citing § 2724(b)(1)-(14)).

5672747.3                                    20

A DPPA claim has three elements: (1) a person knowingly obtains, discloses, or uses personal information (2) from a motor vehicle record (3) for a purpose not permitted. *Id.* at 57 (citing § 2722(a)). Under the DPPA, a "'motor vehicle record' means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles.'" 18 U.S.C. § 2725(1). Driver's license numbers are motor vehicle records and personal information under the DPPA. 18 U.S.C. § 2725(3); *see also Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015).

Plaintiffs have plausibly alleged that Defendants (1) knowingly obtained, disclosed, or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted. Plaintiffs have thus alleged a valid DPPA claim.

### 1.     Defendants Disclosed Plaintiffs' Motor Vehicle Records

Defendants knowingly obtain, use, and disclose motor vehicle records from their customers and from third-party sources. Compl. ¶¶ 4, 21-23, 102. Defendants also knowingly obtain motor vehicle records directly from state agencies or through resellers who sell such records. *Id.* ¶ 103. And Defendants knowingly—and negligently—disclose motor vehicle records to the public, via public access through their instant quote feature. *Id.* ¶¶ 4, 5, 20-25, 51, 78, 104-06, 128-30.

The DPPA prohibits a state DMV from "knowingly disclos[ing] *or otherwise mak[ing] available* to any person or entity" protected information under the statute. 18 U.S.C. § 2721(a) (emphasis added). The Seventh Circuit has held "attaching the terms 'or otherwise make available' to the term 'disclose'" also applies to non-state actors, such as Defendants here, in that "the statute's later use of the term 'disclose' and of 'redisclose' [are] short-handed references back to subsection (a) and the broad language employed there." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 602 (7th Cir. 2012).  The default rule is that "any person or entity authorized to view records is *prohibited* from sharing the information." *Id.* at 603 (emphasis in original). "The statute

then *authorizes* specific disclosures—each of which . . . has a limited object *and a limited class of recipients.*" *Id.* (citing 18 U.S.C. § 2721(b)) (emphasis added).

Defendants offer a public-facing insurance quoting platform for visitors on their website. Compl. ¶¶ 4, 5, 20-25, 51, 78, 104-06, 128-130. Defendants' quoting feature uses the information entered by the website's visitor, combines it with additional information that the system matches, and then automatically pulls information from a third-party to provide the visitor a quote. *Id.* Defendants' online quote system was configured so that *any* potential customer — or the general public, or a hacker, or an automated bot — could fill in bits of data, and the system would auto-fill the remaining information, including driver's license numbers. *Id.* Defendants' online system required *no verification* that the visitor entering the PI requested (name and address, both publicly available pieces of information for large swaths of the public) was the same visitor to which the PI belonged. *Id.* In this way, Defendants *made available* motor vehicle record information to the public (and thus to bad actors). That is to say, Defendants publish and disclose motor vehicle record information to the public on their website.

Making protected information available to the public is a disclosure under the DPPA. *See, e.g., Senne*, 695 F.3d at 603 (placing a parking ticket containing protected information in public on a windshield is a disclosure under the DPPA, as it's a violation if "[t]he real effect of the placement … was to make available [Plaintiff's] motor vehicle record to any passer-by"). Further, publishing protected information in a public way is a disclosure "whether another person viewed the information or whether defendant intended it to be viewed only by the Plaintiff." *Id.* Making protected information available to the public *via the internet* is a disclosure under the DPPA. *See, e.g., Welch v. Theodorides-Bustle*, 677 F. Supp. 2d 1283, 1286-87 (N.D. Fla. 2010) (upholding DPPA claim where the defendants did not deny that plaintiff's personal information was "made

available on the internet" where "an internet user can access the information for any or no reason—or on a whim" and concluding that "alleging specifically that there was a disclosure, and alleging generally that there was no proper purpose for the disclosure, is enough").

> 2.    *Defendants "Knowingly" Disclosed Plaintiffs' Motor Vehicle Records*

Defendants had the requisite intent. Defendants appear to argue that because Defendants did not know that the data they were voluntarily transmitting on their public-facing insurance quoting platform was being transmitted to a bad actor, there can be no liability. This misunderstands the term "knowingly" as used by the DPPA. "Voluntary action, not knowledge of illegality or potential consequences, is sufficient to satisfy the *mens rea* element of the DPPA." *Senne*, 695 F.3d at 603; *Pichler v. UNITE*, 542 F.3d 380, 396–97 (3d Cir. 2008) (discussing the term "knowingly" as it is used in the civil liability provisions of the DPPA and finding that knowledge of illegality is not an element).

Again, Defendants intentionally configured the online quote system so that any member of the public can fill in information and receive a quote. This, of course, means that the system was configured to allow anyone with a few basic bits of data to get Defendants' system to auto-fill the remaining information. This is how the Defendants transmitted Plaintiffs' protected motor vehicle record information to bad actors. Defendants do not and cannot dispute that they voluntarily transmitted Plaintiffs' protected drivers' license information over their online quote system, and therefore this transmission was committed "knowingly" under the DPPA. *Id.*

This situation is unlike *Vertafore*, where criminals hacked into a company's data base to access personal information negligently stored there on unsecured servers. *Vertafore Allen v. Vertafore, Inc.*, 4:20-CV-04139, 2021 WL 3148870, at \*4 (S.D. Tex. June 14, 2021), *report and recommendation adopted*, 4:20-CV-04139, 2021 WL 3144469 (S.D. Tex. July 23, 2021). In *Vertafore*, the defendant stored the data on servers under its own control, which the criminals

breached in an unauthorized manner — meaning the defendant there never knowingly disclosed the data to anyone outside of the company as Defendants did here when they transmitted the protected data over their online quote system. *Id.* Similarly, in *Enslin*, a former employee of the defendant stole company laptops containing driver's license numbers and other data, which data was alleged to have been accessed by identity thieves from the stolen laptops. *See Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 659 (E.D. Pa. 2015), *aff'd sub nom. Enslin v. Coca-Cola Co.*, 739 F. App'x 91 (3d Cir. 2018). The company did not knowingly provide access to the laptops or to the data to anyone outside of the company. A "knowing disclosure" requires the defendant to take some "voluntary action" to disclose the information. *Pichler*, 542 F.3d at 394–95. *McDonough v. Anoka Cty.*, 799 F.3d 931 (8th Cir. 2015) is also inapposite, as the government officials there issued password access to the protected information only to law enforcement agents and officers *in their agencies* whose job duties required the use of personal information in motor vehicle records and who received training about proper use of the database. *Id.* at 956. Furthermore, the database log-in stated: "Access to this service is for authorized personnel only conducting official business [which] thus implicitly certified a permissible purpose each time [the law enforcement agents] logged on." *Id.* That is a far cry from here, where Defendants' online quoting platform offered unfettered access to the public to receive the protected records Defendants transmitted directly to them. Furthermore, *McDonough* directly acknowledges the Seventh Circuit case *Senne* stating that "[v]oluntary action . . . is sufficient to satisfy the mens rea element of the DPPA." *Id.* Here, Defendants' voluntary action was to design the quote system so that it transmitted the data, including driver's license information, over the internet to any member of the public who input small bits of information about the Plaintiffs. The function of the website

was intentional and it acted as programmed. Defendants made the data available to the public. The data wasn't stolen; Defendants gave it away.

### 3. Defendants Did Not Disclose Plaintiffs' Motor Vehicle Records for a Permissible Use

Defendants claim that a precondition of liability is that "Defendants disclosed [] information for an impermissible purpose." Def. Mem. at 16. This is a misreading of the statute. The DPPA at 18 U.S.C. §§ 2724, 2721(b), and 2721(c) includes a list of *permissible* uses for personal information that is obtained, disclosed or used under the statute. For example, 18 U.S.C. § 2721(b)(6) states information may be disclosed "[f]or use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting." These are *exceptions* to the default rule that entities are prohibited from disclosing, using, or obtaining the information.

These permissible uses under the DPPA are to be read narrowly. *Maracich v. Spears*, 570 U.S. 48, 60 (2013). The Supreme Court has placed limits on what constitutes a permissible use under the DPPA. *Id.* ("It is true that the DPPA's 14 exceptions permit disclosure of personal information in a range of circumstances. Unless commanded by the text, however, these exceptions ought not operate to the farthest reach of their linguistic possibilities if that result would contravene the statutory design."); *see also Senne*, 695 F.3d at 603 ("The statute then authorizes specific disclosures — each of which ... has a limited object and a limited class of recipients.").

Plaintiffs are not required to plead a negative; "Plaintiffs' allegations that there was a disclosure, and that there was no proper purpose for the disclosure, is enough." *Welch*, 677 F. Supp. 2d at 1286-87 (upholding DPPA claim where – as here - the defendants did not deny that plaintiff's personal information was "made available on the internet"). Plaintiffs have plausibly

pleaded that Defendants disclosed motor vehicle records for purposes not authorized by the DPPA. This is enough.

Defendants also do not explain how the public disclosure of motor vehicle information to any person with a name and address serves a permissible purpose under the DPPA. It is not enough to say that the information was "used for the purpose of facilitating customer access to insurance." Even if that purpose did fall into 18 U.S.C. § 2721(b)(6) or one of the other 13 exceptions, under an appropriately narrow reading, the DPPA does not provide *unlimited* disclosure for a permissible purpose under the statute. As the Seventh Circuit has observed: "The DPPA was enacted as a public safety measure, designed to prevent stalkers and criminals from utilizing motor vehicle records to acquire information about their victims." *Dahlstrom*, 777 F.3d at 944. The law addressed the problem that "[p]rior to the law's enactment, anyone could contact the department of motor vehicles in most states" and obtain a driver's personal information simply by providing a small bit of data, such as a license plate number. *Id.* "At congressional hearings . . ., numerous witnesses testified about the risks posed by unfettered public access to motor vehicle records." *Id.* In the guise of offering online insurance quotes conveniently, Defendants have re-created the problem the DPPA was enacted to address: unfettered access to protected motor vehicle records by any member of the public with a small bit of their victim's data and an internet connection. This exceeds the permissible scope of the insurance underwriting exception. *See Senne*, 695 F.3d at 604 ("In short, an authorized recipient, faced with a general prohibition against further disclosure, can disclose the information only in a manner that does not *exceed the scope* of the authorized statutory exception."). Otherwise, for example, an insurer or insurance support organization could openly disseminate and publish driver's license numbers on a public forum—as long as it *could* be used

5672747.3                                   26

to facilitate customer access to insurance. This is clearly disallowed under the statute (and remarkably close to what Defendants did here).

Furthermore, Defendants are conflating their reasons for *obtaining* the protected driver's license information and for *disclosing* the information. The DPPA "contains no language that would excuse an impermissible [disclosure] merely because it was executed in conjunction with a permissible purpose." *Pichler*, 542 F.3d at 395 (3d Cir. 2008) ("[I]f [defendant] had three purposes for 'obtain[ing], disclos[ing] or us[ing] [plaintiffs'] personal information' and two of those were 'permissible uses' but the third was not, UNITE would still be liable for the third purpose."). Defendants may have a proper purpose for obtaining and storing the data apart from their impermissible disclosure of the data.

Defendants had no permitted purpose for making information available to the public. Plaintiffs have alleged that Defendants (1) knowingly obtained, disclosed, or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted. Plaintiffs have alleged a valid DPPA claim.

**B.    Plaintiffs' Negligence Claim and Claim for Declaratory Judgment (Counts II and III) are Adequately Pleaded, and Defendants' Motion Must Be Denied.**

1.    *Plaintiffs Allege Actual Loss and Damages Supporting Their Negligence Claim.*

To maintain a negligence cause of action under Wisconsin law, a plaintiff must plead "(1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) actual loss or damages resulting from the injury." *White v. United States*, 148 F.3d 787, 793 (7th Cir. 1998) (citing *Rockweit by Donohue v. Senecal*, 197 Wis. 2d 409, 418 (1995)). Defendants only challenges the fourth element—"actual loss or damage" resulting from the injury caused by Defendants. These arguments are largely duplicative of Defendants' standing arguments.

5672747.3                                                   27

A motion to dismiss under 12(b)(6) must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Rule 8 does not require "detailed factual allegations," but does demand that a plaintiff provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face").

Courts in this circuit recognize there is no requirement for Plaintiffs to identify their losses at the pleading stage. *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018). Plaintiffs need only plead damages for standing, and if Plaintiffs have standing, they alleged injury in fact and damages are available to them. *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 795 (W.D. Wis. 2019) Thus, under federal rules, all that is required is for plaintiffs to "allege generally that [they] have been injured." *Dieffenbach*, 887 F.3d at 828.

Plaintiffs met their pleading burden by alleging that as a result of Defendants' negligence, "Plaintiffs and Class Members have suffered and/or will suffer injury and damages," are already victims of identity theft, and have a "heightened risk for financial fraud, future identity theft, other forms of fraud, and the attendant damages . . . ." Compl. ¶¶ 59, 68, 73, 122. Plaintiffs adequately pleaded they were injured, as required by the federal rules. Therefore, Defendants' motion to dismiss Count II (Negligence) lacks merit and must be denied.

>   2.    *Plaintiffs Allege Recognized Damages and That Their Exposed Information Was Used to Commit Fraud.*

As previously discussed, the alleged damages satisfy the Seventh Circuit's pleading requirements for the state law claim for negligence. Even if Plaintiffs were required to meet a heightened pleading requirement—*which they are not*—Plaintiffs adequately identified

recognized losses and damages supporting their negligence cause of action. In this district, alleging injuries such as "lost time due to increased spam calls and emails, time spent dealing with fraud attempts, the threat of future identity theft, and money spent mitigating that threat" in data breach cases is sufficient at the pleading stage. *Fox*, 399 F. Supp. 3d at 790. Plaintiffs' Complaint satisfies the state law pleading standard as well because Plaintiffs have spent time dealing with fraud attempts and the threat of future identity theft.

### a.    Time spent dealing with fraud attempts and threat of future identity theft

Plaintiffs Baysal and Maxim received notices that claims for unemployment insurance benefits were filed in their respective names with the New York State Department of Labor. Compl. ¶¶ 54, 61. Plaintiffs Baysal and Maxim spent time researching the issue and contacting the New York State Department of Labor to resolve the fraudulent unemployment claims. *Id.* ¶¶ 55, 64. Plaintiff Italiano contacted and notified the Florida Reemployment Assistance Program that she was a victim of a data breach and requested an alert if anyone filed a fraudulent claim. *Id.* ¶ 70. Plaintiff Maxim also spent time responding to a fraudulent account at Charles Schwab and fraudulent purchases at Klarna and Foot Locker. *Id.* ¶ 64. Plaintiffs have each also spent time dealing with the threat of future identity theft.  Compl. ¶¶ 56, 65, 71. These alleged damages are sufficient at the pleading stage to maintain this cause of action under Wisconsin law.

Plaintiffs' damages are also consistent with those recognized by other courts. In New York, the time spent responding to a data breach is also a recognized injury. *Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472 (PKC), 2019 WL 2023713, at *7 (S.D.N.Y. May 7, 2019). The *Rudolph* court held the plaintiff "had identified a concrete and particularized loss" where she alleged she spent time on the telephone with her bank because her account had been frozen and the need for a replacement debit card, spent time reviewing her records, had to drive to the bank to get a new

debit card, and spent time updating payment information with retailers. *Id.*, at *7-8. The allegations in *Rudolph* are similar to the allegations in the case at bar where Plaintiffs spent time responding to the data breach and contacting state agencies and retailers to resolve fraudulent claims and accounts.

### b.    Increased and Ongoing Risk of Fraud and Identity Theft.

For future injuries, the question is whether there is an "objectively reasonable likelihood" that the injury will happen. *Remijas*, 794 F.3d at 693 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (quotation marks omitted)). There is no special test for future injuries in data breach cases. *Fox*, 399 F. Supp. 3d at 791. In data breach cases, the "looming threat of fraud" qualifies as an injury in fact. *Id.*

This view on future injuries is consistent with other circuits. In cases similar to this one involving theft of sensitive information and misuse, courts routinely find the damages for ongoing risk of identity theft are not speculative. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016), (where plaintiffs' sensitive personal information, including driver's license numbers, had been stolen by hackers, the "allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs," were found sufficient to withstand a motion to dismiss); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) ("Given the colossal amount of sensitive data stolen . . . and the unequivocal damage that can be done with this type of data, we have no hesitation in holding that Plaintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft"); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021) ("Naturally, the dissemination of high-risk information such as Social Security numbers and dates of birth – especially when accompanied by victims' names – makes it more likely that those victims will be subject to future identity theft

or fraud"). Indeed, there is nothing speculative about the risks and injuries here because two of the named Plaintiffs' sensitive information has already been misused. *See Galaria*, 663 F. App'x at 388 ("There is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals.")

Additionally, courts view data breach mitigation efforts in tandem with the risks those efforts are designed to ameliorate. *See Rahman v. Marriott Int'l, Inc.*, No. SACV2000654DOCKES, 2021 WL 346421, at *2 (C.D. Cal. Jan. 12, 2021) ("As the Supreme Court has said, 'mitigation costs . . . rise and fall together' with claims based on the risk of future harm." (quoting *Clapper*, 568 U.S. at 402)). Thus, where the risk is genuine, as here where fraudulent use of two of the three named Plaintiffs' information has already begun, the cost of mitigation efforts is compensable. *See, e.g.*, *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) ("Because the injuries alleged by the Plaintiffs are not speculative, the costs of mitigating measures to safeguard against future identity theft support the other allegations and together readily show sufficient injury-in-fact."); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 59 (D.C. Cir. 2019) ("Because [plaintiffs] adequately allege a substantial risk of future identity theft, any expenses they have reasonably incurred to mitigate that risk likewise qualify as injury in fact.").

Here, Plaintiffs alleged a genuine increased risk of identity fraud stemming from the data breach and subsequent documented fraudulent use of their stolen information, and they have also alleged reasonable mitigation efforts as damages. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 494 (D. Md. 2020) ("Because I find that the harms here are not speculative, the losses incurred to mitigate the harms are adequately pled damages in addition to being an injury-in-fact").

While a few courts have found the theft of relatively innocuous data without any allegations of misuse of that data is insufficient to state a claim for damages, *see*, *e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012), those cases are not analogous. Here, Plaintiffs have alleged the theft of sensitive information, *see* Compl. ¶ 51 (exfiltration of PI); the value and potential fraudulent uses of the stolen data, *id.* ¶¶ 35-39 (explaining particular value to identity thieves of driver's license numbers); and misuse of the data, *id.* ¶¶ 54, 61 (data used to fraudulently apply for unemployment benefits); this is sufficient for a cognizable damage claim.

The crux of Defendants' motion focuses on the pleading requirement for potential future injury related to medical monitoring costs in cases where plaintiffs did not plead a current/present injury. However, Defendants' motion is not premised on the facts of this case because it fails to acknowledge the actual damages pled in the Complaint—that identity theft and fraud have already been committed using the data stolen from Defendants for at least two of the three named Plaintiffs. Defendants also argue that "physical injury or damage to property" is needed under New York law. *See* Def. Mem. at 20 (citing *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11, 14 (N.Y. Ct. App. 2013). However, the *Caronia* court was discussing a plaintiff's need to "sustain a physical injury before he or she may recover consequential damages *for medical monitoring*." *Id.* at 16-17 (emphasis added; *see also Alsteen v. Wauleco, Inc.*, 335 Wis. 2d 473, 479 (2011) (plaintiff failed to state a claim where she alleged increased risk of future injury without alleging a present injury). Even then, the courts recognized that if plaintiffs have suffered an injury, future monitoring costs are recoverable. *Caronia*, 5 N.E.3d at 18-19. As a general rule then, damages are also recoverable where a plaintiff alleges the injury or damage is "reasonably certain to [] incur[]" because of the risk. *See Caudle v Towers, Perrin, Foster & Crosby, Inc.*, 580 F. Supp. 2d 273, 281 (S.D.N.Y. 2008) (quoting *Schultz v Harrison Radiator Division General Motors Corporation*, 90 N.Y.2d

311, 321 (1997)) (quotation marks omitted). Plaintiffs' allegations satisfy this pleading requirement because present injuries are alleged.

Here, as previously discussed, Plaintiffs alleged their exfiltrated information has already been fraudulently used by unknown third parties, and Plaintiffs have expended time and resources responding to and resolving the fraud issues—therefore they allege a present injury in fact. Compl. ¶¶ 52-74. Because Plaintiffs allege the injury has occurred—and is likely to continue—their demand for damages based on the future risk of harm is also proper. Because Plaintiffs have alleged present injuries and damages, Defendants' arguments are moot and their motion to dismiss the negligence cause of action must be denied.

This is not only established law, it is also common sense. Plaintiffs and Putative Class Members need not wait until they suffer additional injuries to bring their claims. As explained in *Remijas*, "customers should not have to wait until hackers commit identity theft or credit-card fraud in order to give the class standing, because there is an 'objectively reasonable likelihood' that such an injury will occur." 794 F.3d at 693 (quoting *Clapper*, 568 U.S. at 410).

Plaintiffs met and exceeded their federal court pleading requirement to generally allege their injuries. Fed. R. Civ. P. 8; *Dieffenbach,* 887 F.3d at 828. Therefore, Defendants' motion must be denied. Additionally, since Plaintiffs' negligence claim is properly pleaded, Defendants' motion to dismiss derivative Count III (Declaratory Judgment)—the basis for which relied entirely on Defendants' motion to dismiss Count II—must also be denied.

## V.    CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and, in the alternative, for failure to state a claim under Rule 12(b)(6).

5672747.3                                    33

Dated: October 19, 2021

/s/ Kate M. Baxter-Kauf

David W. Asp (MN #344850)
Kate M. Baxter-Kauf (MN #0392037)
Karen Hanson Riebel (MN #0219770)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
dwasp@locklaw.com
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com

GAYLE M. BLATT
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
Gayle M. Blatt
*gmb@cglaw.com*
P. Camille Guerra
*camille@cglaw.com*
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

*Attorneys for Plaintiffs and the Putative Class*